# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JUNE WILSON, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-0031-BK |
| | § | |
| CAROLYN COLVIN, | § | |
| Acting Commissioner of Social | § | |
| Security, | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge, Doc. 13, this case has been transferred to the undersigned for a final ruling.  The Court now considers the parties' cross-motions for summary judgment.  For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 17, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 19, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

## I.     BACKGROUND[1]

### A.     Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits and supplemental security income under the Social Security Act ("the Act").  In May 2012, Plaintiff filed for benefits, claiming that she became disabled in April 2012, which is also when she last worked.  Doc. 14-6 at 3, 6.  Her application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g).  Doc. 14-3 at 2; Doc. 14-3 at 87; Doc. 14-5 at 2-4, 16-18.

---

[1] The following background comes from the transcript of the administrative proceedings, which can be found at Doc. 14.

**B.**     **Factual Background**

Plaintiff was 58 years old on the date she applied for benefits, and she had a high school

education, some college, and past relevant work experience as a claims clerk and administrative

assistant.  Doc. 14-3 at 97, 106.  Plaintiff has a history of asthma and obesity dating back to at

least 2010.  Doc. 14-8 at 15.  As relevant to these proceedings, Plaintiff repeatedly visited the

emergency room for asthma attacks throughout 2012 and 2013.  Doc. 14-8 at 21-22, 27; Doc. 14-

9 at 3-5, 7; Doc.  14-9 at 15, 17, 22; Doc. 14-9 at 67-68; Doc. 14-10 at 6; Doc. 14-10 at 20, 23,

27; Doc. 14-10 at 51; Doc. 14-10 at 61; Doc. 14-11 at 19; Doc. 14-11 at 48.  Plaintiff also

reported that she was depressed due to her weight.  Doc. 14-10 at 23, 25.  After she reported

depression again in May 2013, Plaintiff's doctor referred her to treatment for depressive

disorder.  Doc. 14-11 at 52.

During Plaintiff's mental health treatment, Dr. Evelyn Parker-Gaspard, Ph.D. noted that

her test results indicated severe levels of depression and anxiety, and the doctor recommended

cognitive behavioral therapy and periodic follow-up appointments with a social worker.  Doc.

14-11 at 59.  In July 2013, it was reported that Plaintiff was cooperative and fully oriented, her

attention, mood, and speech were normal, and her judgment was intact and age appropriate.

Doc. 14-11 at 72.   In September 2013, Plaintiff reported to Dr. Parker-Gaspard that she was

doing "a little better," and that being involved with her grandchildren kept her stable, although

she continued to report depressive symptoms.  Doc. 14-11 at 75.  Dr. Parker-Gaspard diagnosed

Plaintiff with depressive disorder not otherwise specified and encouraged her to return in two

weeks for a full initial appointment. Doc. 14-11 at 76.  Plaintiff returned to Dr. Parker-Gaspard

in October 2013, when she was found to have a mildly dysphoric mood and congruent affect,

although she was alert and oriented and her thought processes were logical and goal directed.

Doc. 14-12 at 6.  She reported no anxiety and stated that her source of financial support was unemployment benefits.  Doc. 14-12 at 6-7.  By November 2013, Plaintiff reported that her depressive symptoms were continuing to improve, although she still had some ongoing symptoms of grief and anger at being laid off.  Doc. 14-12 at 9.  Dr. Parker-Gaspard diagnosed Plaintiff with depressive disorder not otherwise specified.  Doc. 14-12 at 9.

## C.     The ALJ's Findings

In 2013, the ALJ issued an unfavorable decision applying the customary five-step sequential analysis.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset disability date.  Doc. 14-3 at 81.  At step two, the ALJ found that Plaintiff had the severe impairments of asthma, morbid obesity, and depression.  Doc. 14-3 at 81.  At step three, the ALJ determined that Plaintiff did not meet or equal a listed impairment.  Doc. 14-3 at 82.  Specifically, with regard to her mental health, the ALJ noted that Plaintiff's depression had responded to treatment and it appeared to have been "precipitated by her lack of employment after being laid off."  Doc. 14-3 at 85-86.  The ALJ additionally noted that Plaintiff was able to attend to her personal care, prepare three meals a day, do laundry, clean, shop for necessities, attend church, and eat out at restaurants.  Doc. 14-3 at 86.  Accordingly, "given the lack of evidence to establish significant limitations in mental functioning," but considering that there was some evidence of depression that had been responsive to treatment, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "detailed, but not complex work at the semi-skilled level."  Doc. 14-3 at 86.  Proceeding to step four, the ALJ concluded that Plaintiff could perform her past relevant work as a claims clerk.  Doc. 14-3 at 86.  Accordingly, the ALJ held that Plaintiff was not disabled at any relevant time and was not entitled to an award of benefits under the Act.  Doc. 14-83 at 87.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## III.   ARGUMENT AND ANALYSIS

*1.   Whether the RFC violates the holding in* Ripley v. Chater.

Plaintiff argues that the ALJ's mental RFC determination that she is capable of "semi-skilled" work activity was without basis because no physician endorsed that ability or provided a medical source statement, and reversal is thus required under *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995). Doc. 18 at 10, 12.

Defendant responds that the ALJ, not a physician, determines a claimant's RFC based on all of the relevant evidence of record. Doc. 19 at 4-5. Defendant observes that the ALJ's RFC determination followed her full consideration of the evidence, which made it clear that Plaintiff can understand, remember, and carry out detailed, but not complex, tasks given her activities of daily living. Doc. 19 at 5-7.

Plaintiff replies that the fact that her depression responded to treatment and her mental status examination was unremarkable do not relate to Defendant's speculative finding that she can perform work at the semi-skilled level. Doc. 20 at 4.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The Fifth Circuit Court of Appeals has said that an ALJ usually should request a medical source statement that describes the types of work that the claimant is still capable of performing. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "The absence of such a statement, however, does not, in itself, make the record incomplete." *Id.* In a case such as this one, where no medical source has provided a statement regarding Plaintiff's mental RFC, the Court's inquiry focuses upon whether substantial evidence in the existing record supports the ALJ's decision. *Id.*

In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. The appellate court noted that the record contained a vast amount of evidence establishing that the claimant had a back problem, but did not clearly establish what effect that condition had on his ability to work. The court thus remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The court rejected the Commissioner's attempt to argue that the medical evidence substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's conditions, "no matter how 'small'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

This case is unlike *Ripley* and the prior opinions of this Court upon which Plaintiff relies. In *Shugart v. Astrue*, the ALJ attempted to compensate for Plaintiff's depression and anxiety when he limited Plaintiff to simple, unskilled work. No. 12-CV-1705-BK, 2013 WL 991252, at *5 (N.D. Tex. 2013) (Toliver, J.). However, there was no evidence in the record that she could

perform such work and, indeed, two doctors opined that her mental health issues would interfere with or preclude her employment.  *Id.*; *see also Johnson v. Astrue*, No. 12-CV-4175-BK, 2013 WL 3297594, at 5 (N.D. Tex. 2013) (Toliver, J.) (holding that reversal was warranted where the ALJ attempted to compensate for the claimant's depression and anxiety when he limited the claimant to simple, unskilled work that involved minimal contact with others, but the claimant's treating doctor found that he had an "extreme loss" in his ability to perform almost all work-related activities).

To the contrary, in the case at bar, no physician noted any such limitations on Plaintiff's ability to work due to her depression.  While it would have been preferable under the circumstances for the ALJ to have procured a medical source statement describing the types of work that Plaintiff was still capable of performing, substantial evidence noted by the ALJ nevertheless supports the decision that Plaintiff can engage in semi-skilled work.  *Ripley*, 67 F.3d at 557.  Pursuant to the applicable regulations, semi-skilled work is work which needs some skills but does not require more complex work duties.  20 C.F.R. §§ 404.1568(b), 416.968(b).  Semi-skilled jobs may require close attention to watching machine processes, inspecting or looking for irregularities, tending or guarding items or persons, or other activities which are less complex than skilled work, but more complex than unskilled work.  *Id.*  Additionally, a person with a high school education and above is considered capable of semi-skilled through skilled work.  20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4).

In the instant case, Plaintiff has reported that she engages in a wide array of normal activities.  *See Griego v. Sullivan*, 940 F.2d 942, 944-945 (5th Cir. 1991) (finding that an ALJ may consider a claimant's daily activities, along with other evidence, when she evaluates the credibility of the claimant's allegations of disability).  Indeed, Plaintiff's depression has not

prevented her from (1) spending time with her grandchildren, who reportedly keep her "stable"; (2) attending church services; (3) going out to eat at restaurants; (4) attending to her personal care; (5) preparing three complete meals a day; (6) doing laundry; (7) cleaning; (8) shopping for necessities; (9) driving a car; and (10) managing her finances.  Doc. 14-3 at 86; Doc. 14-7 at 54-56.  Furthermore, she reports no difficulties with (1) following instructions; (2) paying attention; (3) finishing what she starts; (4) getting along with authority figures and others; (5) handling stress; or (6) coping with changes in routine.  Doc. 14-3 at 86; Doc. 14-7 at 57-58.  By Plaintiff's own account, she can pay attention, comply with instructions, and she also has some college education.  20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4).  Additionally, her admitted ability to engage in numerous activities of daily life such as driving and managing her finances indicate that she has the focus, skills, and attention necessary to perform semi-skilled work and understand, remember, and carry out detailed tasks.  Accordingly, Defendant is entitled to summary judgment on this ground.

   *2.  Whether the ALJ adequately performed a function-by-function assessment when determining Plaintiff's RFC.*

   Plaintiff asserts that remand is required because the ALJ's RFC for the "semi-skilled" determination was not the product of a function-by-function assessment as required by SSR 96-8p.  Doc. 18 at 13.  Had the ALJ thoroughly considered all of Plaintiff's non-exertional limitations, she argues, the ALJ might have recognized Plaintiff's mental disabilities and not concluded that she was capable of semi-skilled work.  Doc. 18 at 13.

   Defendant responds that the ALJ's decision satisfied SSR 96-8p because it contained a narrative discussion in which she considered the medical and nonmedical evidence of record and explained how the evidence supported her decision.  Doc. 19 at 5-6.

In assessing a claimant's RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184 (1996); 20 C.F.R. §§ 404.1523, 416.923. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Id. The assessment must include a narrative discussion describing how the evidence supports each conclusion, citing both specific medical facts and nonmedical evidence. Id. The RFC assessment must first identify the claimant's functional limitations and assess the claimant's work-related abilities on a function-by-function basis. SSR 96-8P, 1996 WL 374184, *1.

The individual functions to be considered include the exertional functions of sitting, standing, walking, lifting, carrying, pushing, pulling, and other physical functions (including manipulative or postural functions, such as reaching, handling, and stooping) as well as non-exertional functions such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, co-workers, and work pressures. 20 C.F.R. §§ 404.1545(b-c), 416.945(b-c). After identifying a claimant's limitations in these areas, the ALJ expresses the claimant's RFC. Id. The RFC then is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. §§ 404.1520(f), 416.920(f). With regard to a claimant's symptoms, the ALJ is only required to be thorough, resolve inconsistencies, and set forth a logical explanation of the symptoms. Id. The final responsibility for deciding a claimant's RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

In this case, a review of the ALJ's decision confirms that she identified Plaintiff's non-exertional limitations and adequately assessed her work-related abilities on a function-by-

function basis.  The ALJ first determined that Plaintiff had the severe impairments of asthma, morbid obesity and depression and the non-severe impairments of leg pain, right fourth toe fracture, and right arm injury.  Doc. 14-3 at 81-82.  Next, the ALJ noted Plaintiff's symptoms of shortness of breath, anxiety, and depression juxtaposed against her ability to conduct her activities of daily living, which involve cooking, cleaning, and shopping.  Doc. 14-3 at 83.  The ALJ at least implicitly considered Plaintiff's concentration, persistence and ability to understand, remember, and carry out instructions and act appropriately in a work setting when she observed that Plaintiff reported that she can pay attention all day and is good at following instructions, handling stress, and dealing with changes in routine.  Doc. 14-3 at 83.  The ALJ then went on to find that Plaintiff retained the ability to perform a limited range of light, semi-skilled work, as adjusted to accommodate Plaintiff's breathing difficulties, her need to alternate between sitting and standing, and her depression.[1]  Doc. 14-3 at 84-86.  Although the ALJ arguably could have been more explicit in addressing the individual exertional and non-exertional functions, reversal is not warranted.  The ALJ's determination was based on substantial evidence demonstrating Plaintiff's ability to work, and the RFC assessment included a narrative discussion describing how the evidence supported the ALJ's conclusions and relied on both specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL 374184.

The case cited by Plaintiff is inapposite.  In that case, the ALJ determined the claimant's mental RFC without questioning the vocational expert ("VE") and merely assumed that the

---

[1] The level of reasoning development necessary for semi-skilled work at the level of Plaintiff's past relevant work is the ability to apply **Error! Main Document Only.**"principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists.  Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *Dict. of Occ. Titles*, App. C. (4th Ed., Rev. 1991) (discussing level reasoning development of four).  This is also consistent with the ALJ's finding that Plaintiff can perform detailed, but not complex, work.

claimant's failure to meet or equal a listed impairment equated with the capacity to do at least unskilled work. *Otte v. Comm'r, Soc. Sec. Admin.*, No. 3:08-CV-2078-P, 2010 WL 4363400, at *7 (N.D. Tex. 2010), *adopted by* 2010 WL 4318838 (N.D. Tex. 2010). The *Otte* court therefore held that the ALJ's decision was not supported by substantial evidence. *Id.* at *8. By contrast, the ALJ in this case questioned the VE about (1) Plaintiff's ability to find work if she was limited to jobs involving detailed but not complex tasks; and (2) how those limitations would affect her ability to perform her past relevant work. Doc. 14-3 at 121; *cf. Herring v. Astrue*, 788 F.Supp.2d 513, 519 (N.D. Tex. 2011) (finding that the ALJ's hypothetical to the VE stating that the claimant could follow "short simple instructions in a simple and routine work environment" reasonably incorporated the claimant's moderate social functioning limitation); *Gipson v. Astrue*, No. 10-CV-1413, 2011 WL 540299, at *6-7 (N.D. Tex. 2011) (Toliver, J.) (finding that the ALJ reasonably incorporated the claimant's limitation in concentration, persistence and pace and her limited ability to work with others by instructing the VE that she was only able to perform "simple work in which interaction with the public and co-workers is no more than incidental."). Because the ALJ adequately perform a function-by-function assessment in determining Plaintiff's RFC, Defendant is entitled to summary judgment on this ground.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 17, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 19, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on October 22, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE